UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:06CV-14-H

HERSHEL L. TUCKER II                                                                    PLAINTIFF

V.

NAKAGAWA SANGYO JAPAN a/k/a "NSJ"                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Hershel L. Tucker II ("Tucker") was injured while on the job at NSU Corporation ("NSU") in Lebanon, Kentucky. He sued Nakagawa Sangyo Japan ("NSJ") for damages stemming from that injury. In this products liability action, Tucker claims that NSJ "negligently designed, manufactured, assembled, marketed, distributed, placed in the stream of commerce and/or installed" the machine that injured him at his workplace. NSJ has now filed this motion to dismiss, arguing that this Court lacks personal jurisdiction over NSJ. For the following reasons, the Court will deny that motion at this time.

I.

Tucker was employed by NSU at its plant in Lebanon, Kentucky. One of his duties there involved the operation of a glass wool insertion machine. He was operating this machine on January 7, 2005, when the machine crushed three of the fingers on his left hand. Tucker alleges that his injury occurred because the machine he was operating was defective. As part of his training for using the machine, Tucker received an "Operation Process Guide," which included the notation "Nakagawa Sangyo, Co." Tucker also claims that on several occasions, Japanese

workers visited the factory where he worked, and Tucker "understood [these workers] were from the parent company, NSJ."

NSJ is a Japanese corporation. It has no offices or facilities in Kentucky or any other state. NSJ states that it has never entered into any contract in Kentucky, solicited business in Kentucky, or paid taxes in Kentucky. It does transact some business in the United States, but says that it conducts none in Kentucky. NSJ owns no property in Kentucky and has no bank accounts or telephone listings here.

Moreover, NSJ states that it did not manufacture or design the machine that allegedly injured Tucker. NSJ claims that in 2002 it sold the machine to UKT Ltd. Co. ("UKT"), another Japanese company, which in turn distributed the machine to NSU in the United States that same year. NSJ states that UKT and NSJ are separate and distinct companies. NSU, Tucker's employer, is Indiana corporation that is a "separate corporate subsidiary" of NSJ. NSJ does not identify NSU as a "branch, agent or division of NSJ." NSJ states that it does not manage the operations of NSU and that NSU maintains its own board of directors and its own administration.

## II.

Tucker has the burden of establishing this Court's personal jurisdiction over NSJ. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). However, when the Court does not conduct an evidentiary hearing on personal jurisdiction, Plaintiff need only make a *prima facie* showing of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction." *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d

Cir. 1987) (internal quotation omitted). In this procedural posture, the Court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). "Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

District courts must apply the law of the state where they sit, subject to due process limitations, to determine whether specific jurisdiction exists. *Welsh*, 631 F.2d at 439. Kentucky's long-arm statute provides that "a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a claim arising from the person's . . . transacting any business in this Commonwealth . . . ." KRS. § 454.210(2)(a). The Sixth Circuit has interpreted this statute to extend to the limits of due process. Therefore, the Kentucky long-arm statute inquiry and the due process inquiry collapse to a single due process inquiry. *Aristech Chem Int'l, Ltd. v. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (citations omitted).

The requirements of due process are met if the defendant has "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). The Court will apply the Sixth Circuit's familiar three-part test for determining whether the Defendant has such "minimum contacts" with Kentucky:

First, the defendant must purposefully avail himself of the privilege of acting in

> the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (footnote omitted).

First, there is little evidence that NSJ directly "purposefully availed" itself of the privilege of acting in Kentucky. It does not have offices or property in Kentucky, it does not solicit business in Kentucky, it has not paid taxes in Kentucky, it has not entered into contracts in Kentucky, it has no bank accounts in Kentucky, and it has no telephone listings in Kentucky. Plaintiff rests his claim that NSJ "purposefully availed" itself of the privilege of acting in Kentucky on two tenuous threads: that NSJ dispatched workers from its Japanese headquarters to the Kentucky NSU plant to maintain the machines there and that the machine in question had an "Operation Process Guide" from the Nakagawa Sangyo Company, which Tucker understood to be the parent company of NSU. These two factors were established by affidavits from Tucker and Lancaster Smith, a former employee of NSU. Smith also stated in his affidavit that the "almost all of the machines" at NSU "had the name Nakagawa Sangyo on the machines, either printed directly on the machine or printed on a metal tag that was fastened to the machine."

The Court must assume that certain Japanese workers visited the NSU plant in Lebanon, Kentucky for maintenance work. However, such a general assertion is somewhat short of stating with "reasonable particularity" sufficient contacts to justify a finding of "purposeful availment." Plaintiff's affidavits do not indicate how many times such workers visited or how or why the affiants "understood" these workers to be from NSJ. Even if these workers were from NSJ and

did come to the NSU plant semi-regularly, the Court would be reluctant to conclude that these visits alone would support a finding of personal jurisdiction over NSJ.

The Court must also assume that NSJ manufactured the machine in question although NSJ claims that it did not, the evidence is inconclusive on this issue. It does seem clear that NSJ did not <u>directly</u> sell the machine to its subsidiary, NSU, and therefore merely placed the machine into the "stream of commerce." Merely placing a product into a stream of commerce that ultimately ends in the forum state does not constitute "purposeful availment" under the Due Process Clause. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). The *Asahi* Court suggested several other types of conduct that might support a finding of purposeful availment:

> [D]esigning the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Id.* Because no discovery has occurred, there is little disclosed about the relationships between NSJ, NSU and UKT. That unknown relationship could easily establish "purposeful availment," or not. This unknown relationship would also inform the second factor of the *Southern Machines* test, which asks whether the plaintiff's cause of action arises from the defendant's actions in the forum state. *Southern Machines*, 401 F.2d at 381. Again, it is possible that Tucker's cause of action arose from NSJ's purposeful shipping of the glass wool insertion machine to Kentucky, but it is entirely unclear from the evidence presented.

The third factor of the *Southern Machines* test directs this Court to dismiss this action. That prong asks whether the defendant's contacts have a "a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* Here,

the contacts alleged between NSJ and Kentucky are relatively minimal. If the Court were to exercise jurisdiction over NSJ, it could be unreasonable given the *de minimis* nature of NSJ's contacts with Kentucky and the extraordinary inconvenience to which the Defendant would be subjected given its location in Japan. Clearly modern technology and transportation have eased these inconveniences to some degree, but their reality still cannot be ignored.

However, considering the limited state of discovery, the Court must rely heavily upon Plaintiff's allegations; otherwise a defendant could defeat jurisdiction merely by asserting an absence of facts. The Court concludes that the best course of action in these circumstances is that discussed and suggested in *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214-15, 1217-19 (6th Cir. 1989). The Court therefore concludes that Plaintiff's allegations make a *prima facie* case for personal jurisdiction. However, the Court holds out the options of finally resolving the jurisdictional dispute after pretrial discovery or even at trial. Defendant has certainly not waived its personal jurisdiction defense at this point of the litigation. *See, e.g.*, *Hunt v. BP Exploration Co. (Libya) Ltd.,* 492 F.Supp. 885, 895 (N.D. Tex.1980), *abrogated on other grounds*, *Success Motivation Inst. of Japan Ltd. v. Success Motivation Inst., Inc.*, 966 F.2d 1007 (5th Cir. 1992) ("Litigating on the merits after loss on a jurisdictional challenge is thus not considered to be consent to jurisdiction").

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss is DENIED at this time.

cc:    Counsel of Record